IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| United States Of America, *ex rel.* Lynn E. Szymoniak,<br><br>        Plaintiffs,<br><br>vs.<br><br>ACE Securities Corporation; Ally Financial, Inc., f/k/a GMAC Inc.; Aurora Loan Services, LLC; Bank of America, as successor-in-interest to Countrywide Financial Corporation; BAC Home Loans Servicing, LLP; Banc of America Mortgage Securities, Inc.; Bayview Loan Servicing LLC; California Reconveyance Company; Carrington Mortgage Services; Chase Home Finance LLC; CitiMortgage Inc. f/k/a Citi Residential Lending Inc., f/k/a AMC Mortgage Services Inc.; HomEq Servicing Corporation, d/b/a Barclays Capital Real Estate, Inc.; HSBC Mortgage Services Inc.; Litton Loan Servicing LP; Nationwide Title Clearing Inc.; Ocwen Loan Servicing; OneWest Bank; Orion Financial Group, Inc.; Prommis Solutions, LLC; Securities Connection, Inc.; Select Portfolio Services, Inc.; Vericrest Financial, Inc.; Wells Fargo Home Mortgage, d/b/a America's Servicing Company; DocX LLC; and Lender Processing Services, Inc.,<br><br>        Defendants. | C/A No. 0:13-cv-00464-JFA<br><br><br>**ORDER** |

In this *qui tam* action, brought under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, as well as under state and local FCAs, Lynn E. Szymoniak ("Relator") asserts claims of fraud on the government in connection with the alleged improper assignments of mortgages and endorsements of notes. In response, the defendants have filed motions to dismiss, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. On April 28, 2014, the

court heard oral arguments only on the threshold matter of subject-matter jurisdiction. Because Relator's claims already are the subject of a pending FCA action, as described in detail below, the court must dismiss this case as jurisdictionally barred under the first-to-file rule of the FCA, 31 U.S.C. § 3730(b)(5).

I.

This case began with Relator's purchase of real estate. An attorney and resident of Palm Beach Gardens, Florida, Relator financed the purchase of a home in 1998. In 2006, Relator refinanced the mortgage on her home with a loan from Option One. Eventually, the mortgage was transferred to a trust, Soundview Home Loan Trust 2006-OPT2 ("Soundview Trust"), for which defendant Deutsche Bank National Trust Company ("DBNTC") served as trustee. Two years later, in July 2008, Relator defaulted on her loan, and foreclosure proceedings were commenced against her. In the course of her defense of the foreclosure action, Relator investigated the documents that purported to transfer her mortgage to the Soundview Trust and came to believe that the mortgage assignment was a forgery. Relator contends that, after she discovered that the assignment documentation was false, she reviewed public documents in other foreclosures that revealed a "widespread pattern and practice of forging documents" that had "taint[ed] foreclosures nationwide." Third Amended Compl. ¶¶ 57, 82, Feb. 3, 2014, ECF No. 256. In December 2009, Relator contacted an assistant U.S. attorney in Jacksonville, Florida, and also "began reporting her findings of widespread fabricated mortgage assignments" to government entities. *Id.* ¶¶ 99, 100.

On June 4, 2010, Relator filed a *qui tam* action in this court ("S.C. case") on behalf of the United States.[1] In the complaint, Relator named 15 defendants[2] who were trustees or servicers of

---

[1] *U.S. ex rel. Szymoniak v. Am. Home Mortg. Servicing, Inc. et al.*, C/A No. 10-cv-01465-JFA.

2

mortgage-backed securities ("MBS") trusts in which the United States had invested.[3] According to the complaint, the MBS trusts lacked the assignments, or included forged assignments, of the notes and residential mortgages that formed the asset pools of the trusts. Relator alleged that the defendants had defrauded the United States because they had "falsely represented that they held good title to the MBS assets" and had sold impaired securities to government-funded entities; they had "received millions of dollars in U.S. government funds to provide services involving fraudulent mortgage assignments"; and they had "created fraudulent legal documentation to conceal that the trust was missing title to the assets, thus impairing the value of the securities sold" to government-funded entities. Compl. ¶¶ 109, 216, 222, June 4, 2010, ECF No. 1.

As a result, Relator sought to recover, on behalf of the United States, damages and civil penalties from the defendants for (1) knowingly presenting or causing to be presented false or fraudulent claims for payment or approval from the government entity purchasing the MBS, pursuant to 31 U.S.C. § 3729(a)(1)(A); (2) knowingly making, using or causing to be made or used, false records or statements material to false or fraudulent claims to the government-funded entity purchasing the MBS, pursuant to 31 U.S.C. § 3729(a)(1)(B); and (3) conspiring to commit

---

[2] The original complaint in the S.C. case named American Home Mortgage Servicing, Inc.; Saxon Mortgage Services, Inc.; Lender Processing Services, Inc.; DocX, LLC; CitiMortgage, Inc., f/k/a Citi Residential Lending, Inc., f/k/a AMC Mortgage Services, Inc.; Wells Fargo Home Mortgage d/b/a America's Servicing Company; Bank of America Corporation, as successor-in-interest to LaSalle Bank; the Bank of New York Mellon Corporation; Citibank, National Association; Deutsche Bank National Trust Company; Deutsche Bank Trust Company Americas; HSBC USA, National Association; J.P. Morgan Chase Bank, National Association; U.S. Bank, National Association; and Wells Fargo Bank, National Association.

[3] In the S.C. case, Relator categorized the named defendants in the original complaint as (1) "Mortgage Foreclosure Servicing Defendants": American Home Mortgage Servicing, Saxon, Lender Processing Services, DocX, CitiMortgage, and America's Servicing Company; and (2) "Trustee Bank Defendants": Bank of America, Bank of New York Mellon, Citibank, DBNTC, Deutsche Bank Trust Company Americas, HSBC, J.P. Morgan Chase Bank, U.S. Bank, and Wells Fargo Bank.

a violation of 31 U.S.C. § 3729(a)(1)(A) and § 3729(a)(1)(B), pursuant to 31 U.S.C. § 3729(a)(1)(C). Since then, Relator has amended the complaint three times, with the last amendment on February 3, 2014.

On November 12, 2010, Relator filed this *qui tam* action in the United States District Court for the Western District of North Carolina ("N.C. case") on behalf of the United States, 19 states,[4] and the District of Columbia, under their respective FCAs. In the N.C. case, Relator named 23 defendants[5] who were the trustees, servicers, or depositors of MBS trusts in which the federal and state governments had invested.[6] Like in the S.C. case, Relator asserted claims of fraud on the government because the MBS trusts allegedly were missing mortgage assignments, or included forged assignments, of the notes and residential mortgages that comprised the assets of the trusts. Using nearly identical language as in the S.C. case, Relator sought to recover, on

---

[4] California, Connecticut, Delaware, Florida, Hawaii, Illinois, Indiana, Massachusetts, Minnesota, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, and Virginia

[5] The original complaint in the N.C. case included as defendants ACE Securities Corporation; Ally Financial, Inc., f/k/a GMAC, Inc.; Aurora Loan Services, LLC; Bank of America Corporation, as successor-in-interest to Countrywide Financial Corporation; BAC Home Loans Servicing, LLP; Banc of America Mortgage Securities, Inc.; Bayview Loan Servicing, LLC; California Reconveyance Company; Carrington Mortgage Services; Chase Home Finance, LLC; CitiMortgage, Inc., f/k/a Citi Residential Lending, Inc., f/k/a AMC Mortgage Services, Inc.; HomEq Servicing Corporation, d/b/a Barclays Capital Real Estate, Inc.; HSBC Mortgage Services, Inc.; Litton Loan Servicing, LP; Nationwide Title Clearing, Inc.; Ocwen Loan Servicing; OneWest Bank; Orion Financial Group, Inc.; Prommis Solutions, LLC; Securities Connection, Inc.; Select Portfolio Services, Inc.; Vericrest Financial, Inc.; Wells Fargo Home Mortgage, d/b/a America's Servicing Company; and John Doe Corporations, 1 through 100.

[6] Relator categorized the named defendants in the original complaint as (1) "Mortgage Servicing Defendants": Aurora, BAC Home Loans Servicing, Bayview, California Reconveyance Company, Carrington, CitiMortgage, Barclays, HSBC, Litton, Nationwide Title Clearing, Ocwen, Orion Financial Group, Prommis Solutions, Securities Connection, Select Portfolio, Vericrest Financial, America's Servicing Company; (2) "Trustee Bank Defendants": Ally Financial, Bank of America, Chase Home Finance, and OneWest Bank; and (3) "Depositor Defendants": ACE Securities and Banc of America Mortgage Securities. Collectively, they are referred to as the defendants.

behalf of the United States, damages and civil penalties from the defendants under the same three provisions of the federal FCA as in the S.C. case. Unlike the S.C. case, Relator also alleged that the same scheme had defrauded the state governments under their respective FCAs. Relator amended her complaint on February 3, 2011, adding claims on behalf of the cities of New York and Chicago under their FCAs, and filed a second amended complaint on June 28, 2011. On February 21, 2013, the N.C. case was transferred to this court. After the United States declined to intervene on August 1, 2013, this court unsealed the case.[7] The Relator filed a third amended complaint on February 3, 2014.[8]

In the third amended complaint, Relator alleges that the defendants defrauded and harmed the United States and state governments because the missing or forged assignments of the notes and residential mortgages led to the submission of false claims in three ways: (1) The defendants used the falsified documents to recover payments from the mortgage insurance program administered by the Federal Housing Administration ("FHA"); (2) the defendants charged the government for the creation and filing of the falsified documents in FHA-insured foreclosures; and (3) the defendants submitted false claims to the investors of the MBS trusts, including the federal and state governments, for services never rendered and for services and expenses related to the falsified documents used in foreclosures.

In response, the defendants have filed motions to dismiss, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing that (1) Relator's claims and allegations are jurisdictionally barred because they were disclosed publicly before the commencement of this action and Relator does not qualify as an "original source," as required by

---

[7] Other than limited intervention by the United States to effectuate the dismissal of claims against certain defendants, no government has intervened.
[8] Although the third amended complaint is labeled "Consolidated Third Amended Complaint," the court has not consolidated the N.C. case with the S.C. case.

5

31 U.S.C. § 3730(e)(4); (2) Relator's claims are jurisdictionally barred under the first-to-file rule of the FCA, 31 U.S.C. § 3730(b)(5), because they already are the subject of a pending FCA action; and (3) Relator has failed to meet the pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure.

Once the motions were fully briefed, the court scheduled a hearing for both the N.C. case and the S.C. case. To promote judicial economy, the court decided that it would bifurcate the oral arguments, hearing only the Rule 12(b)(1) motions to dismiss on April 28, 2014, and hearing the Rule 12(b)(6) motions at a later date if needed. ECF No. 339. Two days before the scheduled hearing, on April 26, 2014, the United States notified the court that it was objecting, pursuant to section 3730(e)(4)(A) of the FCA, to the dismissal on public disclosure grounds of any allegations in Relator's third amended complaint relating to claims for payment submitted after March 22, 2010.[9] ECF No. 340.

At the hearing on April 28, 2014, because of a last-minute change of position of Relator, the court heard little to no arguments on the public disclosure bar of the FCA, 31 U.S.C. § 3730(e)(4). However, after hearing arguments on the first-to-file rule of the FCA, 31 U.S.C. § 3730(b)(5), the court dismissed the N.C. case as jurisdictionally barred.[10] At the close of the hearing, the court announced that it would set out its reasons for the rulings in a written order.

---

[9] An amended section 3730 of the FCA took effect on March 23, 2010, giving the United States a right to oppose the dismissal of a complaint under to the public disclosure bar. Although the United States objects to the dismissal of allegations relating to claims for payment submitted *after* March 23, 2010, the court construes the objection to mean *on or after* March 23, 2010.

[10] Because the court has determined that this case should be dismissed on first-to-file grounds, it need not reach the question of whether it lacks jurisdiction under the public disclosure bar of the FCA, 31 U.S.C. § 3730(e)(4). Were the court to reach that issue, it would hold that all claims for conduct occurring before March 23, 2010, are barred under 31 U.S.C. § 3730(e)(4) for the reasons stated in its order in the S.C. case, *U.S. ex rel. Szymoniak v. Am. Home Mortg. Servicing, Inc. et al.*, C/A No. 10-cv-01465-JFA, filed contemporaneously herewith.

II.

Defendants may challenge subject-matter jurisdiction of an FCA claim through a Rule 12(b)(1) motion to dismiss in one of two ways. First, they may launch a facial attack by contending "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *see also Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260–61 (11th Cir. 1997). If defendants facially attack a complaint for lack of subject-matter jurisdiction, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams*, 697 F.2d at 1219. Alternatively, defendants may contend that the complaint's jurisdictional allegations simply are not true. *Id.*; *see also Garcia*, 104 F.3d at 1260–61. In such a factual attack of the complaint's jurisdictional allegations, the plaintiff carries the burden of proving subject-matter jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). In that situation, this court may "go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations." *Adams*, 697 F.2d at 1219. Further, the presumption of truthfulness does not apply, and this court may decide disputed issues of fact related to subject-matter jurisdiction. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). On first-to-file grounds, the defendants here contend that the complaint fails to allege sufficient facts to support subject-matter jurisdiction. Thus, for purposes of the first-to-file bar, they launch a facial attack, and this court applies a Rule 12(b)(6) standard that assumes the truthfulness of the facts alleged in Relator's complaint. Having ascertained the legal framework for resolving the Rule 12(b)(1) motions to dismiss, the court turns to the FCA and analysis.

III.

The FCA imposes civil liability on persons who knowingly submit false claims to the government.  31 U.S.C. § 3729, *et seq.*  To that end, the FCA establishes a scheme that permits a private citizen, who becomes a relator, to initiate a civil action known as a *qui tam* against perpetrators of fraud.  *See* 31 U.S.C. § 3730(b).  While encouraging whistleblowers, however, the FCA also "seeks to prevent parasitic lawsuits based on previously disclosed fraud."  *U.S. ex rel. Carter v. Halliburton Co.*, 710 F.3d 171, 181 (4th Cir. 2013).  "To reconcile these conflicting goals, the FCA has placed jurisdictional limits on its qui tam provisions," including the first-to-file rule, 31 U.S.C. § 3730(b)(5).  *Id.*

Under the first-to-file rule, "[w]hen a person brings an action under [the FCA], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action."  31 U.S.C. § 3730(b)(5).  In other words, only one *qui tam* action relating to the alleged fraud is permitted to be pending at any time.

In moving to dismiss, the defendants argue that this case and the S.C. case are related actions that deprive this court of subject-matter jurisdiction under the FCA's first-to-file rule. The Fourth Circuit has described the first-to-file bar as "an absolute, unambiguous exception-free rule."  *Carter*, 710 F.3d at 181.  "Therefore, whoever wins the race to the courthouse prevails and the other case must be dismissed" for lack of subject-matter jurisdiction.  *Id.*

To determine if a case is barred by the first-to-file rule, this court first must determine if the earlier filed case was pending at the commencement of the case filed later.  *U.S. ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 920 (4th Cir. 2013).  Second, this court must decide if the claims in the later-filed case are based on facts underlying the case filed first.  *Carter*, 710 F.3d

at 182. Because the S.C. case undisputedly was pending at the time the N.C. case was filed, the court turns to the second prong of the analysis.

Under the first-to-file rule, "a later suit is barred if it is based upon the 'same material elements of fraud' as the earlier suit, even though the subsequent suit may "incorporate somewhat different details."" *Id.* (quoting *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1189 (9th Cir. 2001). Consequently, the first-to-file bar does not require the exact same facts to be alleged in the later-filed case; rather, this court must determine "whether the [subsequent complaint] alleges a fraudulent scheme the government already would be equipped to investigate based on the [prior complaint.]" *United States ex rel. Batiste v. SLM Corp.*, 659 F.3d 1204, 1209 (D.C. Cir. 2011).

Here, it is clear that the N.C. case is based on the same material elements of fraud as the earlier filed S.C. case. In fact, the two cases share most, if not all, essential or material facts. The differences between the original complaints in the two cases are that the defendants are not identical and that the N.C. case also asserts the same allegations on behalf of state governments pursuant to their respective FCAs.

To the best of the court's knowledge, the Fourth Circuit has not addressed whether allegations in a first-filed case can bar, on first-to-file grounds, related allegations against different defendants brought in a subsequent case. This prompts the court to look to other circuits for guidance.

The District of Columbia Court of Appeals has held that the first-to-file rule bars an action against subsidiaries of a corporation when a first-filed action names only the corporation. *U.S. ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214, 218–19 (D.C. Cir. 2003). In reaching this conclusion, the D.C. Circuit relied on the fact that the first action alleged

9

"corporate-wide" fraud perpetrated by the corporation through its subsidiaries. *Id.* The Tenth Circuit Court of Appeals, relying on *Hampton*, has concluded that an FCA action against a corporation bars a later action alleging the same essential claim of fraud against its subsidiaries. *United States ex rel. Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1280 n. 4 (10th Cir. 2004). The Sixth Circuit Court of Appeals has stated in dicta that, for purposes of the first-to-file rule, "the fact that the later action names different or additional defendants is not dispositive as long as the two complaints identify the same general fraudulent scheme." *U.S. ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 517 (6th Cir. 2009) (internal citations omitted). That is "because the purpose of the FCA's first-to-file provision is to prevent the filing of more *qui tam* suits once the government already has been made aware of the potential fraud perpetrated against it." *Id*. The Fifth Circuit Court of Appeals, looking at cases addressing the issue of unnamed defendants in the context of the public disclosure bar, has suggested "that there might be situations in which the allegations in a first-filed complaint pertain to such a narrow or readily-identifiable group of potential wrongdoers that § 3730(b)(5) acts to bar subsequent allegations against previously unnamed defendants."[11] *U.S. ex rel. Branch Consultants v.*

---

[11] The Fifth Circuit collected cases: *See, e.g., United States ex rel. Gear v. Emergency Med. Assocs. of Ill., Inc.*, 436 F.3d 726, 729 (7th Cir. 2006) (Industry-wide public disclosures of Medicare fraud bar *qui tams* "against any defendant who is directly identifiable from the public disclosures."); *United States v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, 1019 (9th Cir. 1999) (Public disclosures of fraud that failed to identify specific defendants but pertained to "a narrow class of suspected wrongdoers—local electrical contractors who worked on federally funded projects over a four-year period"—triggered the public disclosure bar as to those contractors.); *United States ex rel. Fine v. Sandia Corp.*, 70 F.3d 568, 571–72 (10th Cir. 1995) (Where disclosures "revealed that at least two of [the laboratory's] eight sister laboratories were engaged in" a fraud, the government would have little trouble "examining the operating procedures of nine, easily identifiable, [Department of Energy]-controlled, and government-owned laboratories."); *United States ex rel. Cooper v. Blue Cross and Blue Shield of Fla., Inc.*, 19 F.3d 562, 566 (11th Cir. 1994) (Allegations of widespread Medicaid fraud made in sources in which a particular insurer was not specifically named or otherwise directly identified were insufficient to trigger the public disclosure bar). *Id.* at 379-80.

*Allstate Ins. Co.*, 560 F.3d 371, 380 (5th Cir. 2009).  Ultimately, the Fifth Circuit held in *Branch Consultants* that the first-to-file rule did not bar a relator's allegations against defendants not named in an earlier suit because the new defendants were neither corporate affiliates nor subsidiaries of the defendants in the first suit, and because the first-filed suit did not provide the government with facts from which it could discern "industry-wide fraud."  *Id.*  (First-filed suit asserted "general allegations of wind/water fraud against four [write-your-own] insurers.").

      Here, in the original complaints, Relator named 15 defendants in the S.C. case and 23 defendants in the N.C. case.  Like in *Hampton* and *Grynberg*, many corporate defendants in the N.C. case were represented already in the S.C. case.  Based on the pleadings alone, at least five large corporations—Bank of America, Citigroup, HSBC, JPMorgan Chase, and Wells Fargo—appear to have been named in both cases either in their own capacity or through a subsidiary, making up seven of the 15 defendants in the S.C. case, and making up seven of the 23 defendants in the N.C. case.  Unlike the allegations against a few insurers in *Branch Consultants*, the original complaint filed in the S.C. case alleged that the 15 defendants' practices "tainted foreclosures in South Carolina and nationwide."  Compl. ¶ 27, June 4, 2010, ECF No. 1.  The S.C. case also alleged that Relator, through her investigations, "uncovered a wide spread pattern and practice of forging documents."  *Id.* ¶ 52.  In light of these circumstances, this court finds that this action—the N.C. case—is barred by the first-to-file rule.  Although not all of the defendants are the same in the two cases, the court finds significant overlap and allegations of industry-wide fraud.  Thus, the S.C. case put the government on notice to investigate the fraudulent scheme alleged later in the N.C. case.  Because the government already had been made aware of the essential or material facts of the scheme, it had enough information to

discover any related fraud. The court finds that the dismissal of the N.C. case on first-to-file grounds comports with the twin goals of the FCA.

As noted above, unlike the original complaint in the S.C. case, Relator also sought to recover on behalf of 19 state governments and the District of Columbia when the N.C. case was filed originally. The claims were asserted under those plaintiffs' respective statutes, which mirror the federal FCA. However, for purposes of the first-to-file rule, 31 U.S.C. § 3730(b)(5), this court must compare the *federal* claims in the S.C. case to those in the N.C. case to decide if the FCA bars the later-filed action. Having determined that it does, the court declines to exercise jurisdiction over any claims alleged under any state and local FCAs. *See* 28 U.S.C. § 1367.

IV.

Accordingly, the court dismisses Relator's complaint without prejudice on first-to-file grounds. The court declines to exercise supplemental jurisdiction over any claims alleged on behalf of the state and local governments under their respective FCAs.

IT IS SO ORDERED.

May 12, 2014  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge